UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION
JURY

| | | |
|---|---|---|
| DANNY WILLIAMS | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | **CIVIL NO. 5:08-CV-00131** |
| | § | |
| | § | |
| P.A.M. TRANSPORT, INC. AND | § | |
| LISTER MCCOLLISTER | § | |

## DEFENDANT P.A.M. TRANSPORT, INC.'S  MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE JUDGE OF SAID COURT:

Now come P.A.M. TRANSPORT, INC., ("PAM"), one of the defendants in the above-styled and numbered cause, and pursuant to Federal Rule of Civil Procedure 56 and *Local Rules Tex. (S.D.),* Rule 6 (1994), files this Motion for Summary Judgment, and asks the court to render partial summary judgment against the plaintiff.  Defendant respectfully shows the court the following:

### A.    Introduction

1.    Plaintiff is Danny Williams ("Williams").  Defendants are PAM and David McCollister ("McCollister").[1]

2.    On August 15, 2008, plaintiff filed his lawsuit.  Plaintiff sued McCollister, the driver, for negligence, and PAM for failure to train, negligent hiring, failure to ensure reasonable care, and negligent supervision.  On September 29, 2008, PAM filed an answer and McCollister filed his answer on January 4, 2009.

---

[1] McCollister was incorrectly named Lister McCollister.

3.     PAM files this motion for partial summary judgment on plaintiff's causes of action for failure to train, negligent hiring, failure to ensure reasonable care, and negligent supervision.  Summary judgment should be granted in this case because as a matter of law, plaintiff does not have a cause of action for failure to train, negligent hiring, failure to ensure reasonable care, and negligent supervision against PAM.

B.     Background

4.     On January 5, 2007, an accident occurred involving Williams and McCollister.  Defendant, PAM, is the owner of the tractor operated at the time of the accident by its employee, McCollister. Plaintiff sued PAM for failure to train, negligent hiring, failure to ensure reasonable care, and negligent supervision.

5.     Attached as Exhibit 1 is the stipulation made by PAM regarding its vicarious responsibility for McCollister's alleged acts/omissions at the time of the accident in question.  Attached as Exhibit 2 are relevant parts to the deposition of Roger Allen, who is Plaintiff's expert.   Exhibits 1 and 2 are submitted as evidence in support of this motion.

C.     Standard of Review for Summary Judgment

6.     The burden of proof in a summary judgment proceeding is one of the same party who would bear the burden of proof at trial.  Fed. R. Civ. P. 56(c); *Celotex Corp. V. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  The district court must resolve all reasonable doubts about the facts in favor of the non-movant. *Hom v. Squire,* 81 F.3d 969, 973 (10th Cir. 1996); *Pocchia v. NYNEX Corp,* 81 F.3d 275, 277 (2nd Cir. 1996).  Therefore, the movant for summary judgment must prove there is no genuine issue about any material fact and that it is entitled to judgment as a matter of

2

law. Fed. R. Civ. P. 56(c) *Irby v. Bittick,* 44 F.3d 949, 953, (11th Cir. 1995). It may also satisfy its burden by negating the existence of a material element of the Plaintiff's claim. *Celotex*, 477 U.S. at 322-25, 106 S. Ct. 106 at 2552-54.

D.      Argument & Authorities

<u>As a Matter of Law There is No Cause of Action for Failure to Train, Negligent Hiring,
Failure to Ensure Reasonable Care, and Negligent Supervision</u>

7.      Defendants' motion for summary judgment as a matter of law is based on the rule of law that when an entity is sued for the acts of its employee, that entity cannot, as a matter of law, be held liable for independent torts if it is vicariously liable for the employee's alleged tort. *Estate of Arrington v. Fields*, 578 S.W.2d 173, 175 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.); *Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex. App.--Dallas 2002, pet denied).

8.      A cause of action against the employer for negligently hiring, supervising, training or retaining are based on direct liability, not vicarious liability. *Morris v. JTM Materials*, 78 S.W.3d 28, 49 (Tex. App. – Fort Worth 2002, no pet). When the tort of the employee is involved, however, the employer's liability for ordinary negligence is established under the doctrine of *respondeat superior. See Rosell,* 89 S.W.3d at 654. So, if the employer is sued for an independent act of negligence -- for example "negligent entrustment" -- that cause of action does not survive if there is *respondeat superior* liability for the act of the employee, and if the employer stipulated to vicarious responsibility. *Estate of Arrington*, 578 S.W.2d at 175; *Rosell,* 89 S.W.3d at 654; *see also LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 137, n.9 (Tex. App.—Amarillo 1997, writ denied); *Dieter v. Baker Serv. Tools, Inc.*, 739 S.W.2d 405, 408 (Tex. App.— Corpus Christi 1987, writ denied). When the employer asserts vicarious responsibility

3

(e.g., stipulates that it is vicariously liable for the acts/omissions of its employee, if any), evidence of the independent acts/omissions of the employer is limited to a gross negligence allegation. *Estate of Arrington*, 578 at 175. That is so because the derivative liability of the employer through the theory of *respondeat superior* has already been established by a stipulation of vicarious liability -- at which point the competence or incompetence of the employee and the care exercised in his employment are immaterial issues. *Id.* at 178. The employer is liable for the acts of his employee whether the servant is competent or not. *Id.*

9.     In this case, Plaintiff alleged that PAM did not properly train McCollister, and that it did not use ordinary care in hiring and supervising its employees. Claims for "negligent hiring", "negligent retention," "negligent supervision" and "negligent training" are based on the action taken by the employer with respect to a given employee that creates an unreasonable risk of harm to others. *See, e.g., Deerings West Nursing Center v. Scott*, 787 S.W.2d 494, 496 (Tex. App.-- El Paso 1990, writ den.) (analogizing nursing home's liability for hiring unlicensed and potentially unfit nurse to vehicle owner's liability for entrusting vehicle to unlicensed and unfit driver); *Yeager v. Drillers, Inc.*, 930 S.W.2d 112, 117 (Tex. App.--Houston [1st Dist.] 1996, no writ); *Leake v. Half Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559, 563 (Tex. App. -- Dallas 1996, no writ); *Peek v. Equipment Services, Inc.*, 906 S.W.2d 529, 534 (Tex. App. -- San Antonio 1995, no writ); *Porter v. Nemir*, 900 S.W.2d 376, 385-387 (Tex. App. — Austin). To be actionable, the plaintiff must first prove that the employee committed an actionable tort. *Gonzales v. Willis*, 995 S.W.2d 729 (Tex. App. — San Antonio 1999, no pet.). These types of claims, however, are based on direct liability <u>when no vicarious</u>

liability exists for the tort of the employee. *See LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 137, n.9 (Tex. App.— Amarillo 1997, writ denied); *see also Dieter v. Baker Serv. Tools, Inc.*, 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ denied). Thus, if a defendant asserts vicarious liability (e.g., stipulates that it is vicariously liable for the acts of its employee), information regarding negligent hiring (retention or training) is limited to the issue of punitive damages. *Estate of Arrington v. Fields*, 578 S.W.2d 173, 175 (Tex. Civ. App.— Tyler 1979, writ ref'd n.r.e.). This means that unless the claim for negligent hiring, retention or training is accompanied by a claim for gross negligence/malice against the employer, the negligent claims are not actionable if the employer is responsible vicariously for the acts of the driver/employee.

      10. In this case, plaintiff did not sue PAM for gross negligent training, gross negligent hiring, and/or gross negligent supervision.[2] Accordingly, pursuant to the holding in *Estate of Arrington*, the negligent hiring, training, supervision and lack of reasonable care asserted against PAM, and its vicarious liability under *respondeat superior*, are mutually exclusive modes of recovery if course and scope of employment has been established, and only ordinary negligence has been pled. *Estate of* Arrington, 578 S.W.2d at 178. That is so because the derivative liability of the PAM is already been established by a stipulation of *vicarious liability* (Exhibit 1) -- at which point the competence or incompetence of the employee and the care exercised in his employment are immaterial issues. *Id.* at 178. PAM will be liable for the acts/omissions of its employee, if any, whether the employee is competent or not. *Id.*; *see also Rosell,*

---

[2] There is no claim for gross negligence against PAM and there is no evidence of gross negligence on the part of PAM for any of these acts/omissions. In fact, in the deposition of Roger Allen, plaintiff's expert, opposing counsel stated that she was not alleging gross negligence against PAM. *See* pages 185, line 2 to page 186, line 1.

*Inc.*, 89 S.W.3d at 654.

11. Based on the above, PAM, who is vicariously liable for the acts/omissions of McCollister under the theory of *respondeat superior*, is entitled to summary judgment as a matter of law on the negligent training, negligent hiring, negligent in ensuring reasonable care, and/or negligent supervision causes of action against it. Therefore, Defendant PAM asks the court to summarily dismiss the causes of action for negligent training, hiring, supervision, or lack of reasonable care against it. *See Estate of Arrington*, 578 S.W.2d at 175.

## As a Matter of Law There is No Cause of Action for Failure to Exercise Reasonable Care Independent from Negligence

12. Plaintiff has also alleged that PAM failed to exercise reasonable care from causing an unreasonable risk of harm to others.

13. The duty of ordinary care is the duty to use the degree of care that a reasonably careful person would use to avoid harm to others under circumstances similar to those faced by the actor. *Mitchell v. Missouri-Kansas-Texas R. Co.*, 786 S.W.2d 659, 663 (Tex. 1990). The determination of the unreasonable dangers of harm to others that require ordinary care is a function of reasonableness – that is, what the ordinarily prudent person could foresee that harm was a likely result of a condition, then it is a danger. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex. 1975).

14. When dealing in the context of an employer's duty to third persons, a cause of action such as the one alleged by plaintiff herein arises when an employer exercises some control over an incapacitated employee (e.g., a drunk employee), and the employer assumes the duty to act as a reasonably prudent employer would under the same or similar circumstances to prevent the off-duty employee from causing an

6

unreasonable risk of harm to others. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 311 (Tex. 1983). The employer must have knowledge of the employee's incapacity and he must exercise some affirmative action to control the employee. *Ianni v. Loram Maint. Of Way, Inc.*, 16 S.W.3d 508, 514 (Tex. App. – El Paso 2000, pet. denied).

15.     Such cause of action is not viable in this case for two reasons. First, McCollister was not off duty when the accident occurred – he was in the course and scope of his employment with PAM. *See* Exhibit 1. Second, PAM is vicariously liable for the torts, if any, of McCollister by virtue of its stipulation of vicarious responsibilty. Accordingly, PAM is entitled to summary judgment as a matter of law on Plaintiff's allegations that it failed to exercise reasonable care from causing an unreasonable risk of harm to others.

**F.     Conclusion**

1.     PAM is entitled to summary judgment as a matter of law on the causes of action asserted against it because PAM is already vicariously liable for the alleged acts/omissions of its employee, David McCollister.

2.     Based on the above, summary judgment on plaintiff's cause of action for negligent entrustment should be in all things granted.

3.     The filing of this motion was discussed with Lashone Fleming-Bruce, one of the attorneys for Plaintiff,  on May 15, 2009. The motion is opposed by virtue of Ms. Fleming-Bruce not making a comment to the same.

WHEREFORE, PREMISES CONSIDERED, PAM prays that the court grant this motion and award summary judgment in its favor on the issue of negligent in hiring, supervising, training, retaining, McCollister or that it violated the standard of reasonable

care., and for such other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

**THE ALVAREZ LAW FIRM, P.C.**
415 Shiloh, Suite A
Laredo, Texas 78045
956/722-6601
956/722-1527 (fax)

By: _____

**PATRICIA O. ALVAREZ**
State Bar No. 01128850
Federal ID No. 13473
**JANET M. PAYNE**
State Bar No. 24048717
Federal ID No. 627245

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on the 24th day of May, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Dana T. Williams
State Bar No. 00794852
**THE WILLIAMS FIRM, P.C.**
4201 F.M. 1960 West, Suite 455
Houston, Texas 77068

LaShon Fleming-Bruce
State Bar No. 24007188
Federal ID No. 35005
The Fleming-Bruce Law Firm, P.L.L.C
12777 Jones Road, Suite 110
Houston, Texas 77070

_____
**PATRICIA O. ALVAREZ**

8

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION
JURY

DANNY WILLIAMS                                          §
                                                        §
                                                        §
                                                        §
VS.                                                     §    **CIVIL NO. 5:08-CV-00131**
                                                        §
                                                        §
P.A.M. TRANSPORT, INC. AND                              §
LISTER MCCOLLISTER                                      §

## **DEFENDANT'S STIPULATION OF EMPLOYMENT**

Now comes P.A.M. TRANSPORT, INC. ("PAM"), a defendant in the above-styled and numbered cause, and files this stipulation and admission relating to the employment relationship between PAM and David McCollister ("McCollister").

### A.    Stipulation Regarding Employment Relationship

1.    PAM purposefully, and voluntarily consents and stipulates that McCollister was acting as an employee of PAM on January 5, 2007, at the time of the accident made the basis of the above numbered styled and cause of action ("Incident in Question"). For purposes of this Stipulation, PAM agrees that the term "Employee" as used throughout this Stipulation, shall be defined pursuant to the Texas law as a "person in the service of another with the understanding, express or implied, that such other person has the right to direct the details of the work not merely the result to be accomplished."

2.    PAM purposefully, and voluntarily consents and stipulates that at the time of the Incident in Question McCollister was acting in the scope of his employment for

PAM.  For purposes of this stipulation, PAM agrees that an employee is "acting in the scope of his employment" if he is acting in furtherance of the business of his employer as defined by Texas law.

3.      Finally, PAM knowingly, purposefully, and voluntarily consents and stipulates that it is vicariously responsible for the acts and/or omissions, if any, of McCollister for the Incident in Question.

Respectfully submitted,

**THE ALVAREZ LAW FIRM, P.C.**
415 Shiloh Drive, Suite A
Laredo, Texas, 78045
(956) 722-6601
(956) 722-1527 (Fax)

By:_____
        **PATRICIA O. ALVAREZ**
        State Bar No. 0112885
        Federal ID No. 13473
        **JANET M. PAYNE**
        State Bar No. 24048717
        Federal ID No. 627245

        **ATTORNEYS FOR DEFENDANTS**

# EXHIBIT 2

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION


DANNY WILLIAMS                     )
                                   )
                                   )
VS.                                )   CIVIL NO.
                                   )   5:08-CV-00131
P.A.M. TRANSPORT, INC. AND         )
LISTER MCCOLLISTER                 )


*********************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

Roger Charles Allen

MAY 15, 2009

*********************************************************

    ORAL AND VIDEOTAPED DEPOSITION OF ROGER CHARLES

ALLEN produced as a witness at the instance of the

Defendant and duly sworn, was taken in the

above-styled and numbered cause on the 15th day of

May, 2009, from 9:51 a.m. to 3:45 p.m., before

Jessica R. Benson, Certified Shorthand Reporter in

and for the State of Texas, reported by computerized

stenotype machine at the offices of RGK Consultants,

211 E. Parkwood, Suite 110, Friendswood, Texas,

pursuant to the Federal Rules of Civil Procedure and

the provisions stated on the record or attached

hereto.

2

INDEX

PAGE

1  Appearances ............................ 4
2  ROGER CHARLES ALLEN
3   Examination by Ms. Alvarez ................. 7
4  Changes and Signature Page ............. 219
5  Reporter's Certificate ................. 221
6

7

8  EXHIBITS

9

10

11  No. 1    Notice of Deposition        7
12  No. 2    Resume        26
13  No. 3    TrukSafe America Information    34
14  No. 4    Deposition and Trial Testimony    45
15  No. 4-A    Deposition and Trial Testimony    63
16  No. 5    Copy of Check No. 5413    54
17  No. 6    Blank Sheet of Paper    55
18  No. 7    RGK Consultant Invoices    57
19  No. 8    RGK Consultant Invoices    57
20  No. 9    Expert Consulting Agreement    60
21  No. 10    Materials Reviewed List    61
22  No. 11    Preventable Accident Manual    61
23  No. 12    Index of Correspondence    62
24  No. 13    Deposition List    64
25  No. 14    Donald McCollister Time Line    65

4

1    A-P-P-E-A-R-A-N-C-E-S
2
3  COUNSEL FOR PLAINTIFF:
4    Ms. Dana T. Williams
     THE WILLIAMS FIRM, P.C.
5    4201 F.M. 1960 West, Suite 455
     Houston, Texas 77068
6    TELEPHONE: (281)440-8928
     EMAIL: dwilliams@wms-firm.com
7
     Ms. LaShon Fleming-Bruce
8    THE FLEMING-BRUCE LAW FIRM. P.L.L.C
     12777 Jones Road, Suite 110
9    Houston, Texas 77070
     TELEPHONE: (281)469-9090
10
11  COUNSEL FOR DEFENDANTS:
12    Ms. Patricia O. Alvarez
     THE ALVAREZ LAW FIRM, P.C
13    415 Shiloh Dr., Suite A
     Laredo, Texas 78045
14    TELEPHONE: (956)722-6601
     FAX: (956)722-1527
15    EMAIL: palvarez@thealvarezlawfirm.com

16  THE VIDEOGRAPHER:

17    Mr. Peter Jennings

18  ALSO PRESENT:

19    Mr. Jay Hanson
20
21
22
23
24
25

3

EXHIBITS (Cont'd)

1

2

3  No. 15    First Notice of Deposition    65
4  No. 16    Volume I of Correspondence    67
5  No. 17    Volume III of Correspondence    67
6  No. 18    Volume II of Correspondence    67
7  No. 19    Picture of Tire and Mud Flap    97
8  No. 20    Picture of Parking Lot    118
9  No. 21    Tractor-Trailer Driver Handbook    129
10  No. 22    Bumper to Bumper Excerpt    132
11  No. 23    Record of Road Test    134
12  No. 24    P.A.M. Transport Driver's Manual    135
13  No. 25    Hand-drawn Diagram    156
14  No. 26    Indiana Commercial Driver's License
            Test Booklet    168
15
    No. 27    Excerpt from Indiana Commercial
16           Driver's License Test Booklet    165
17  No. 28    Bumper to Bumper Book Excerpts    164
18  No. 29    Mr. Allen's Calculations    210
19
20
21
22
23
24
25

5

CERTIFIED QUESTIONS

1

2

3  No. 1    Can you please tell us what judgments have
4          been pending against you at any time in the
5          last five to six years?
6          (page 21, line 6)
7  No. 2    Anything you're relying on other than 6 1
8          of these two handbooks?
9          (page 170, line 6)
10  No. 3    I want to know the particulars upon which
11          you base your opinion that Mr. McCollister
12          was not looking out for pedestrians,
13          bystanders, or co-drivers.
14          (page 180, line 16)
15  No. 4    You just did not consider the fact that
16          Mr. Danny Williams was also responsible for
17          not paying attention to where he was
18          looking. Would that be a fair statement?
19          (page 192, line 18)
20  No. 5    Again, sir, can you please tell me what
21          analysis of the evidence you performed,
22          exact analysis? I need to know.
23          (page 193, line 14)
24
25

182

1  standards of a commercial driver and he had been on
2  the lookout for pedestrians, bystanders, or
3  co-drivers, this accident would not have occurred and
4  Danny Williams would not have been hit" and the
5  bobtail ran over. Do you see that?
6      A. What page are you on, ma'am?
7      Q. On page 4, sir, of your report. "All
8  commercial drivers know or should know that
9  pedestrians are hazards and to never assume someone
10 is out of the way." So, my question to you is: What
11 basis do you state that McCollister --
12 Mr. McCollister assumed that no one was in his way?
13     A. He backed into the place without making
14 sure that there was nobody in the way of his truck or
15 a potential of being in the way of his truck.
16     Q. And you're saying that he backed up -- not
17 back away -- backed up, correct, and he wasn't
18 looking at his mirrors? He --
19     A. I didn't say he wasn't looking in his
20 mirrors. I said he wasn't --
21     Q. Not using the mirrors you said.
22         MS. WILLIAMS: Objection,
23 mischaracterizes witness' prior testimony
24     A. I said he wasn't using his mirrors
25 properly.

183

1      Q. (By Ms. Alvarez) Okay. Properly. So, he
2  wasn't using his mirrors properly, correct?
3      A. That's correct.
4      Q. Okay. Now, tell me, what is the proper use
5  of mirrors when you're backing up?
6      A. You make -- first of all, you got to look
7  around. You look in both mirrors. My God, how many
8  times do we got to say this over? You go from left
9  to right, left to right. You use both the west coast
10 mirrors and the convex mirrors to make sure as you're
11 backing, backing slowly.
12     Q. Okay. That's it, right?
13     A. Yes, ma'am. That's what I said before,
14 numerous times.
15     Q. Now, what is your definition of gross
16 negligence, sir?
17     A. When a driver knew he was not acting in a
18 safe way, but he decided to go ahead and do --
19 continue doing whatever he was doing when he knew he
20 wasn't safe.
21     Q. Is that your definition of gross
22 negligence?
23     A. Well, that's in the case. I don't -- I've
24 got that down in my office. I don't remember the
25 word for word of what it is.

184

1          MS. WILLIAMS: Objection, calls for a
2  legal conclusion
3      A. I can get it, if you'd like.
4      Q. (By Ms. Alvarez) Well, you say that my
5  client, Mr. McCollister, was gross negligent; and
6  that's what you say in your report.
7      A. That's correct.
8      Q. And I want to know what your definition is
9  of gross negligence, and I'm going to repeat what you
10 just told me. When a driver knew that he was not
11 acting in a safe way.
12     A. That's correct.
13     Q. Is that your definition?
14     A. That's not the legal definition. I'm
15 trying -- I don't remember the word for -- wording as
16 the court has laid it out what negligence and gross
17 negligence is. I'm just giving you what I thought.
18 In this case here, he didn't make sure the -- it was
19 safe for him to back. He didn't make sure that there
20 was pedestrians out of the way, and he went ahead and
21 did it. So, he was acting unconsciously, endangering
22 anybody that surrounded him.
23     Q. Okay. So, how do you know that he did not
24 know that he was -- or that he knew that he was not
25 acting in a safe way?

185

1      A. If he would have --
2          MS. WILLIAMS: I'm going to object as
3  to relevance on this entire line of questioning.
4      A. He should have --
5          MS. ALVAREZ: Hey, you've got gross
6  negligence. I'm entitled to --
7          MS. WILLIAMS: I didn't plead --
8          MS. ALVAREZ: -- all this.
9          MS. WILLIAMS: -- gross negligence,
10 Patricia.
11         MS. ALVAREZ: Yeah, you do. He's got
12 gross negligence in here
13         MS. WILLIAMS: He said that. I didn't
14 plead that.
15         MS. ALVAREZ: Well, he's got it right
16 here.
17         MS. WILLIAMS: Objection -- my
18 objection is relevance.
19         MS. ALVAREZ: If you didn't plead it
20 and you're going to withdraw gross negligence from
21 anything from his testimony, I've got no problem
22         MS. WILLIAMS: Redact it. Do what you
23 want to do. I haven't pled it. I'm just telling you
24 it's object -- I'm objecting as to the relevance of
25 this line of questioning because my client isn't

Videotaped Deposition of Roger Allen

48  (Pages 186 to 189)

186

1  seeking damages for gross negligence
2      A.  There's a question?
3      Q.  (By Ms. Alvarez) Yeah.
4      A.  What is it?
5          MS. ALVAREZ:  Can you please repeat
6  the question for me?
7          (Whereupon the requested portion of
8          testimony was read back.)
9      A.  Because he wasn't looking out to make sure
10  that there was no pedestrians near his vehicle when
11  he started backing up because if he had done
12  everything that he should have been trained for, he
13  would have been scanning the whole area; and he
14  didn't do it.
15      Q.  (By Ms. Alvarez) Okay.  Is that it?
16      A.  I think that's what I've been saying all
17  day, ma'am.
18      Q.  Now, you agree with Mr. -- let me ask you.
19  Do you agree or disagree with Mr. Huff's testimony
20  that he saw four-way blinkers on before
21  Mr. McCollister's truck approached the parking
22  space -- the empty parking space?
23      A.  I don't agree.  I don't disagree.  It
24  doesn't matter.  They would not have been visible to
25  Mr. Williams because Mr. Williams was approaching the

187

1  truck from an angle and he wouldn't have been visible
2  to him and, also, with it being daylight, the
3  four-way flashers is not going to be that visible.
4      Q.  Do you agree or disagree with Mr. Huff's
5  testimony that he saw Mr. McCollister turn to the
6  right mirror and then to the left mirror as he was
7  backing up?
8      A.  I don't know.  I know that's what he said;
9  but if he was using his mirrors properly, then he
10  should have seen Mr. Williams.
11      Q.  Do you agree -- so, you don't agree with
12  that, correct?
13      A.  I don't agree.  I don't disagree.  If he
14  was -- if he was doing it, then he's not doing it
15  properly.
16      Q.  Do you agree or disagree that -- with
17  Mr. Huff that he saw Mr. Williams wisking (sic) and
18  singing and not paying attention?
19      A.  I don't know, ma'am.  I wasn't there.  And
20  with all the noise that's around a truck stop, how
21  was he even able to hear if he was whistling and
22  singing, especially with him up inside his truck?
23      Q.  And that's your own conclusion, right?
24      A.  Yes, ma'am.
25      Q.  Do you agree or disagree with Mr. Huff that

188

1  he saw Mr. Williams turning away from the -- my
2  client's tractor as he hopped towards it?
3          MS. WILLIAMS:  Objection,
4  mischaracterizes prior testimony.
5      Q.  (By Ms. Alvarez) And that's at page 33 of
6  Mr. Huff's deposition.  Do you agree or disagree with
7  that?
8      A.  I have no comment about that, ma'am.
9      Q.  Okay.  Let's talk about Mr. Walter
10  Williams' testimony.  Do you agree or disagree that
11  he said that Mr. McCollister was backing up at less
12  than 1 mile per hour?
13      A.  I don't see how he can be a judge of that.
14  As I previously stated, for a reverse gear, it allows
15  the truck to go between 1 and 3 mile an hour.  Being
16  less than 1 mile an hour, I don't know.  It's
17  recommended that you idle.  I don't know, ma'am.
18      Q.  Do you agree or disagree with Mr. Walter
19  Williams, another independent witness, when he said
20  that he heard a honk before Mr. McCollister started
21  backing up?
22      A.  That isn't what I understand.  I understood
23  the honk to be just prior to Mr. Williams being run
24  over.
25      Q.  Do you -- so, you don't agree with

189

1  Mr. Williams -- Mr. Walter Williams on that, do you?
2          MS. WILLIAMS:  Objection,
3  mischaracterizes witness' prior testimony.
4      Q.  (By Ms. Alvarez) Page 16 and 17 of his
5  deposition.  Did you read it?
6      A.  I read his deposition, ma'am.
7      Q.  So, you don't agree with Walter Williams,
8  that he heard a honk before Mr. McCollister started
9  backing up, correct?
10          MS. WILLIAMS:  Same objection
11      A.  That's not my understanding of what -- the
12  honk came just prior to him being run over, not
13  before he was backing up.
14      Q.  (By Ms. Alvarez) Do you agree or disagree
15  that Mr. Walter Williams saw Mr. McCollister stopping
16  before he began backing up and honked his horn at
17  that point?
18          MS. WILLIAMS:  Same objection
19      A.  As the truck came around, it was moving
20  forward.  It would have had to stop before it was put
21  in reverse.  So, did the truck stop?  Yes, I'm sure
22  it stopped because he would have had to stop and then
23  place the truck in reverse.
24      Q.  (By Ms. Alvarez) But you don't agree that
25  before it started backing up, it honked, correct?

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION
JURY

DANNY WILLIAMS                          §
                                        §
                                        §
                                        §
VS.                                     §   **CIVIL NO. 5:08-CV-00131**
                                        §
                                        §
P.A.M. TRANSPORT, INC. AND              §
LISTER MCCOLLISTER                      §

## ORDER GRANTING DEFENDANT'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

On this day came on to be considered P.A.M. Transport, Inc.'s Motion for Summary Judgment as a matter of law on the issue of negligent failure to train, negligent hiring, negligent failure to ensure reasonable care, and negligent supervision. After considering the law, the pleadings of the parties as well as the evidence, the court is of the opinion that defendant's motion should be granted.

IT IS, THEREFORE, ORDERED that Defendant's Motion for Partial Summary Judgment on the issue of negligent hiring, supervision, training, retention, and violation of the standard of reasonable care against PAM is hereby **GRANTED** as a matter of law.

SIGNED this _____ day of _____, 2009

_____
JUDGE PRESIDING

9